✓ FILED      ___ ENTERED
___ LOGGED   ____ RECEIVED

2:37 pm, Dec 16 2022

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS

I, Jaclyn Bloomingdale, a Special Agent with the Federal Bureau of Investigation ("FBI") being first duly sworn, hereby deposes and states as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      Your Affiant, along with others, is conducting an investigation of Tomeka Glenn ("**GLENN**"), Kevin Recardo **DAVIS** ("**DAVIS**") and others concerning fraudulent Paycheck Protection Program ("PPP") and Economic Injury Disaster ("EIDL") loans.

2.      I make this affidavit in support of an application for a Criminal Complaints and Arrest Warrants charging **GLENN** and **DAVIS** with Wire Fraud Conspiracy, in violation of 18 U.S.C. § 1349.

3.      I have been a Special Agent of the FBI since March 2005.  I am currently assigned to the FBI's Baltimore Field Office where I conduct complex white-collar crime investigations in Maryland.  I have duties that include investigations of, among other matters, mail fraud, wire fraud, aggravated identity theft, fraud against the government, public corruption, and money laundering. Through my 17-plus year career as a Federal Agent, I have assisted and participated in the preparation and execution of multiple search and arrest warrants, including electronic account search warrants.

4.      Through my training and experience, I have become familiar with the methods and techniques used by criminals to commit financial and other white collar crimes, and how those criminals conceal and store information and assets related to and derived from such criminal activity.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is

1

intended to show merely that there is sufficient probable cause for the requested Complaints and Arrest Warrants and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

### Background Regarding the U.S. Small Business Administration Paycheck Protection Program

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering from the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program.

6. To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. A PPP applicant is required to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant must state, among other things, its: (a) average monthly payroll expenses and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses. To qualify for eligibility, businesses applying for a PPP loan needed to be in operation before or on February 15, 2020.

7. A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the United States Small Business Administration ("SBA"). Data from the application, including information about the borrower, the

total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA during the processing the loan.

8.      PPP loan proceeds must be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated time period and uses a certain percentage of the PPP loan proceeds on payroll expenses.

9.      In or around December 27, 2020, the Economic Aid to Hard-Hit Small Business, Nonprofits and Venues Act provided additional funding for the PPP program and extended the application deadline to March 31, 2021. The Act enabled borrowers to take a second draw PPP loan under the same general terms as their first PPP loan up to a maximum loan amount of $2 million. The Act reopened the program to borrowers who did not previously receive a first draw PPP loan. To be eligible for a second draw, borrowers must employ no more than 300 employees, demonstrate a 25% reduction in gross receipts during a calendar quarter in 2020, and have expended the full amount of their initial PPP loan. Allowable expenses were expanded to include worker protection costs related to COVID-19, uninsured property damage costs caused by looting or vandalism during 2020, and certain supplier costs and expenses for operations. The expansion applies retroactively to first draw PPP loans that have not been forgiven by the SBA.

**Background Regarding the U.S. Small Business Administration**
**Economic Injury Disaster Loan Program**

10.      An Economic Injury Disaster Loan ("EIDL") is an SBA administered loan designed to assist small businesses that suffered substantial economic injury resulting from a declared disaster. An EIDL helps a business meet necessary financial obligations that could have been met had the disaster not occurred. It provides relief from economic injury that the disaster caused and

3

permits a business to maintain a reasonable working capital position during the period that the disaster affected.

11.     Additionally, the SBA offers an EIDL advance that is designed to provide emergency economic relief to businesses that are currently experiencing a temporary loss of revenue. This advance does not have to be repaid, and small businesses may receive an advance, even if they are not approved for an EIDL loan. The maximum advance amount is $10,000.00. The amount of the loan offered as well as the advance amount are determined by the SBA based on the information provided on the loan application.

12.     EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including information as to the gross revenues for the 12 months prior to the disaster, the cost of goods sold, and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

**SBA Loan Fraud Scheme**

13.     In September 2020, a Baltimore County Police Department ("BCPD") detective identified fraudulent PPP loan applications and loans associated with the targets of a criminal investigation being conducted by that agency. The targets of the BCPD investigation submitted loan applications on behalf of businesses that did not exist in any legitimate capacity. The loan applications contained false statements concerning the number of employees employed by the businesses, the financial earnings and payroll expenses of the businesses, and income taxes

withheld by the businesses. Further, the loan applications were supported by false documents supplied by the applicants, which included purported Internal Revenue Service ("IRS") Form W-3 Transmittal of Wage and Tax Statements that were not consistent with IRS records.

14.    A review of financial records, communications, and other information obtained by the BCPD detective led to the identification of several other individuals who also applied for and received SBA PPP loans and EIDLs in a similar manner, including **GLENN**.

15.    I have reviewed SBA records and identified PPP and EIDL loans obtained by **GLENN** for businesses that she owns and/or controls.  The PPP and EIDL applications submitted by **GLENN** were found to contain false statements and misrepresentations regarding **GLENN** and her respective businesses. Many of the applications were submitted on behalf of businesses that either did not exist in any legitimate capacity, and/or businesses that grossly over-represented their financial conditions and number of employees. Further, the wages and financial conditions represented in the loan applications were not consistent with IRS records. Likewise, the spending of the SBA loan proceeds was often inconsistent with typical payroll and other business expenses allowable under the SBA loan program parameters.

16.    All the loan applications and supporting documents were submitted by **GLENN** to the SBA (or through SBA authorized lenders) electronically via the internet, and loan proceeds were often disbursed via ACH transfers, causing interstate wire communications to be sent in furtherance of the scheme to defraud.

### June 2020 EIDL Application for K'Dons Vanity Décor

17.    On June 19, 2020, an EIDL application for an entity called "Kdonsvanity décor" [sic], with an Employer Identification Number ("EIN") of 84-4005365, was submitted.  An entity called K'Dons Vanity Décor LLC, EIN 84-4005365, was formed in the State of Maryland on

December 17, 2019.   **GLENN**, whose address was listed as 920 Arion Park #60, Baltimore Maryland, was listed as K'Dons Vanity Décor's Registered Agent.

18.     The EIDL application indicated, among other things, that the business had gross revenues of $175,000 in the twelve months prior to January 31, 2020 and employed 10 employees as of January 31, 2020. The application listed **GLENN** as the owner of the business, with a business address of 920 Ario [sic] Park Road #60, Baltimore Maryland and a phone number of 443-477-9451.

19.     The following question was answered "No" on page 2 of the application:

> a. Are you presently subject to an indictment, criminal information,                     **No**
> arraignment, or other means by which formal criminal charges are
> brought in any jurisdiction? b. Within the last 5 years, for any felony,
> have you ever been convicted, plead guilty, plead nolo contendere,
> been placed on pretrial diversion, or been placed on any form of parole
> or probation (including probation before judgment)?

20.     In fact, **GLENN** had been convicted of felonious credit card fraud in Fairfax County, Virginia on March 11, 2016.  On or about February 14, 2019, she also was convicted of "Misdemeanor 1" Access Device Fraud in York County, Pennsylvania—an offense punishable by more than one year's imprisonment.

21.     **GLENN** ultimately received an EIDL advance in the amount of $10,000, which was disbursed to a Bank of America account ending in 7688.  I have reviewed records from the Bank of America account ending in 7688; it was opened in the name of K'Dons Vanity Décor LLC on December 17, 2019, with **GLENN** as the sole signatory.

22.     The EIDL loan, however, was ultimately declined by the SBA due to "Unsatisfactory credit history."

**July 2020 PPP Loan Application for K'Dons Vanity Décor**

23.     Based on information obtained from Fundbox, an authorized SBA lender, on or about July 23, 2020, a PPP loan application was submitted for K'Dons Vanity Décor. The loan application identified **GLENN** as the business owner and included, among other things, **GLENN**'s PII as well as an image of a genuine Maryland Driver's License issued to **GLENN**. On the loan application, the following items were selected under the loan purpose section: Payroll, Lease/Mortgage Interest, and Utilities.

24.     The PPP loan application claimed that **GLENN**'s business had ten (10) employees, and an average monthly payroll of $20,000 (equivalent to more than $240,000 annually).[1]

51.     Question 6 on the application was initialed "Tg", confirming the applicant was not convicted of felony in the last five (5) years.  Again, as noted above, **GLENN** has been convicted of at least two prior offenses punishable by imprisonment for a period exceeding one year.

25.     The application further noted that if Question 6 is "answered 'Yes,' the loan will not be approved."

26.     The loan application also affirmed that the business "was in operation on February 15, 2020…or had employees for whom it paid salaries and payroll taxes or paid independent contractors."

27.     Fundbox loan records and supporting documentation included a digital PDF file of a June 2020 bank statement for the Bank of America account ending 7688, and an IRS Notice dated December 17, 2019, assigning K'Don's Vanity Décor LLC an Employee Identification

---

[1] According to records obtained by the Maryland Department of Labor, a claim for unemployment insurance (UI) benefits was made in **GLENN**'s name on or about May 21, 2020. The application claimed, among other things, that (1) **GLENN** was self-employed—the EIN for K'Dons Vanity Décor LLC was listed as **GLENN's** employer; (2) no other workers were employed by the business; and (3) **GLENN's** estimated total earnings was $37,000.  Ultimately, more than $21,000 in unemployment compensation was sent to **GLENN** at her listed residence of 920 Arion Park, Apt. 60 in Baltimore, Maryland.

Number. Also included with the application were several purported 2019 IRS Forms 941 – Employers Quarterly Federal Tax Return for multiple quarters in 2019. The purported IRS Forms 941 each indicated that K'Don's Vanity Décor LLC had 10 employees and paid wages each quarter in excess of $83,000.

28.     In fact, IRS records indicate that there was no record of business tax filings for K'Don's Vanity Décor LLC for the tax years 2019 or 2020.

29.     On August 3, 2020, SBA PPP loan #2861228205 was approved for K'Don's Vanity Décor LLC account in the amount of $70,357.50.  The loan proceeds were disbursed on August 12, 2020, via an ACH transfer to the K'Dons Vanity Décor LLC Bank of America account ending in 7688 and controlled by **GLENN**, causing an interstate wire to be sent.

30.     Records for the Bank of America account ending in 7688 show that the account was opened on December 17, 2019, with **GLENN** as a signatory. From the opening of the account on December 17, 2019, until the deposit of the PPP loan proceeds on August 12, 2020, there were no payroll expenses debited from the account or other activity consistent with the employee wages represented on the PPP loan application.

31.     Moreover, in the weeks immediately following the disbursement of the PPP loan, several purchases of luxury goods were made from Bank of America account ending in 7688. For example, on August 17, 2020 (five days after the funds disbursed), a $3,094.67 purchase was made at Dolce & Gabbana in Short Hills, New Jersey.

32.     Further, just a few days after the PPP loan was approved, on August 8, 2020, **GLENN** opened a Bank of America account ending in 1439 in the name of a purported business called TD Innovative Consulting, for which **GLENN** was the sole signatory.

33.     Within a month after opening the Bank of America account ending in 1439, the account reflected, among other things, purchases of luxury goods and purchases associated with travel to a resort—as set forth below:

| Date | Purchase | Amount |
|------|----------|--------|
| 9/8/2020 | Louis Vuitton | $503.50 |
| 9/8/2020 | Louis Vuitton | $2,787.80 |
| 9/21/2020 | Neiman Marcus | $530.00 |
| 9/22/2020 | Hermes | $1,909.70 |
| 9/22/2020 | Dior | $3,054.40 |
| 9/22/2020 | Neiman Marcus | $1,790.02 |
| 9/28/2020 | Cartier | $3,135.80 |
| 10/14/2020 | Louis Vuitton | $2,787.80 |
| 10/19/2020 | Kalahari Resort | $455.60 |
| 10/19/2020 | Kalahari Resort | $1,110.12 |
| 11/2/2020 | Neiman Marcus | $1,033.50 |

34.     More specifically, the September 27, 2020 purchase of $3,135.80 worth of goods at Cartier in King of Prussia, PA was for two pairs of sunglasses for $1,145 each, a $560 belt, and two bottles of perfume for $70 each.  Records from the Kalahari Resort associated with the above-listed charges reflect that they were associated with a reservation at the resort from October 16, 2020 through October 19, 2020 under the name Kevin **DAVIS**, **GLENN**'s partner (as discussed further below).

35.     Records from Nieman Marcus indicate that the above-referenced charges were

made by **GLENN** for various items, including multiple pairs of Christian Louboutin brand shoes—one priced at $2295 and the other at $1095—and multiple bottles of perfume.  Records from Christian Dior indicate that the above-referenced charges were made by a "Ms. Tomeka Davis"—which I understand to be **GLENN**'s alias—with an address of 920 Arion Park Apt. 60 in Baltimore, Maryland.  The charges were for the purchase of $1,200 hat and a $990 pair of women's sneakers.

36.     On or about July 19, 2021, **GLENN** submitted a forgiveness application on behalf of K'Don's Vanity Décor for the PPP loan, signing under penalty of perjury.  The application claimed that $67,390 of the PPP loan had been spent on payroll costs.  The PPP loan was ultimately forgiven.

37.     During the course of the investigation, law enforcement discovered multiple other business entities (or purported business entities) associated with **GLENN** that applied for EIDL or PPP loans, including TD Innovative Consulting, referenced above, and Epoxy By S.H.E. LLC, in addition to an entity called "Kaydon Vanity Décor."  They are discussed in turn below.

**November 2020 EIDL Application for TD Innovative Consulting**

38.     On or about November 10, 2020, an EIDL application was submitted for a purported entity called TD Innovative Consulting LLC.  The EIDL application indicated, among other things, that the business had gross revenues of $313,000 in the twelve months prior to January 31, 2020 and employed 11 employees as of January 31, 2020. The application listed **GLENN** as the owner of the business, with a business address of "920 arion park apt 60", Baltimore Maryland and a phone number of 443-477-9451.

39.     The following question was answered "No" on page 2 of the application:

a. Are you presently subject to an indictment, criminal information,                    No
arraignment, or other means by which formal criminal charges are
brought in any jurisdiction? b. Within the last 5 years, for any felony,
have you ever been convicted, plead guilty, plead nolo contendere,
been placed on pretrial diversion, or been placed on any form of parole
or probation (including probation before judgment)?

40.     Again, as noted above, **GLENN** has been convicted of at least two prior offenses

punishable by imprisonment for a period exceeding one year.

41.     The application listed a Bank of America account ending in 1442 as the account to

which any loan funds could be sent.  I have reviewed records from Bank of America for the Bank

of America account ending in 1442. The Bank of America account ending in 1442 was opened in

the name of TD Innovative Consulting LLC on August 8, 2020—approximately three months

before the submission of the EIDL application.

42.     I have reviewed records from the account.  There were no payroll expenses debited

from the account or other activity consistent with the employee wages.

43.     The EIDL loan sought for TD Innovative Consulting was ultimately declined by

the SBA due to "Unsatisfactory credit history."

### November 2020 EIDL Application for "Kaydon Vanity Décor"

44.     On or about November 20, 2020, an EIDL application was submitted for an entity

called "Kaydon vanity décor."  The application listed **GLENN** as the owner of the business, with

a business address of "920 arion park apt 60", Baltimore Maryland and a phone number of 443-

477-9451.  The EIDL application indicated, among other things, that the business had gross

revenues of $327,000 in the twelve months prior to January 31, 2020 and employed 11 employees

as of January 31, 2020.

45.     The application further noted that Kaydon vanity décor was established on March

27, 2018.  However, your affiant has been unable to locate any Maryland articles of organization

for a purported business of this name with Maryland SDAT.  Further, as noted above, the business K'Dons Vanity Décor LLC, owned by **GLENN**, was formed in December 17, 2019.

46.     Further, the following question was again answered "No" on page 2 of the application:

> a. Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? b. Within the last 5 years, for any felony, have you ever been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgment)?                    No

47.     The application listed a Bank of America account ending in 8483 as the account to which any loan funds could be sent.  I have reviewed records for the Bank of America account ending in 8483. The Bank of America account ending in 8483 was opened in the name of K'Dons Vanity Décor LLC on December 17, 2019, with **GLENN** as the sole signatory.

48.     The EIDL was also ultimately declined by the SBA due to "Unsatisfactory credit history."

### March 2021 EIDL Application for Epoxy By S.H.E.

49.     On or about March 3, 2021, an EIDL application was submitted for an entity called "epoxy by S.H.E." causing an interstate wire to be sent.  Epoxy By S.H.E. LLC was formed in the State of Maryland on September 12, 2019.  **GLENN**, whose address was listed as 920 Arion Park #60, Baltimore Maryland, was listed as the company's Registered Agent. The listed business address was also 920 Arion Park #60, Baltimore Maryland.[2]

50.     The EIDL application indicated, among other things, that the business had gross revenues of $313,727 in the twelve months prior to January 31, 2020 and employed 9 employees

---

[2] The IP address associated with the submission of the application was registered to an address in Baltimore, Maryland; I understand the SBA's servers to be located in Virginia.

as of January 31, 2020. The application listed **GLENN** as the owner of the business, with a business address of "920 arion park # 60", Baltimore Maryland and a phone number of 443-477-9451. The application further noted that the business was established on July 11, 2018. But, again, according to records filed the with the State of Maryland, the business's articles of organization were filed on September 12, 2019.

51.     Moreover, the following question was again answered "No" on page 2 of the application:

> a. Are you presently subject to an indictment, criminal information,      No
> arraignment, or other means by which formal criminal charges are
> brought in any jurisdiction? b. Within the last 5 years, for any felony,
> have you ever been convicted, plead guilty, plead nolo contendere,
> been placed on pretrial diversion, or been placed on any form of parole
> or probation (including probation before judgment)?

52.     The application listed the Bank of America account ending in 1442 in the name of TD Innovative Consulting LLC (on August 8, 2020) as the account to which any loan funds could be sent. Again, there were no payroll expenses debited from the account or other activity consistent with the employee wages.

53.     IRS records indicate that there was no record of business tax filings for Epoxy By S.H.E. for the tax years 2019 or 2020.

### April 2021 PPP Loan Application for Epoxy By S.H.E.

54.     On or about April 20, 2021, a PPP loan application for Epoxy By S.H.E. was submitted to Eastern Savings Bank, an SBA approved lender. The application sought a loan of $141,311.20.

55.     The loan application identified **GLENN** as the business owner and included, among other things, **GLENN**'s PII, including an address of "920 arion park" in Baltimore, Maryland and a phone number of 443-477-9451

56.     On the loan application, the following items were selected under the loan purpose section: Payroll, Rent/Mortgage Interest Payments, and Utilities.

57.     The PPP loan application information indicated that **GLENN**'s business had ten (10) employees.  The application further noted that the business was established on September 12, 2018.  But, as noted above, the business's articles of organization were not filed until September 12, 2019.

58.     Moreover, the following question was answered "No" on page 1 of the application:

Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A.:
No

59.     In fact, as discussed above, **GLENN** was the owner of several other businesses, including businesses that applied for PPP and EIDL loans.

60.     Next, the following question was answered "No" on page 1 of the application:

Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?
No

61.     Again, as noted above, **GLENN** has been convicted of at least two prior offenses involving fraud, including one within five years of the date of the submission of the application.

62.     Eastern Savings Bank also provided copies of the documents submitted in support of the loan application, including an image of a voided check from a BB&T account ending in 9989 with a payor of Epoxy By S.H.E. LLC, digital PDF files of a purported February 2020 bank statement for the BB&T account ending in 9989, and a purported IRS Form 940 for 2019: Employer's Annual Federal Unemployment Tax Return.

63.     The purported IRS Form 940 each indicated that "EPOXY BY SHE" paid wages for 2019 in excess of $678,293.81.  Again, in fact, IRS records indicate that there was no record of business tax filings for Epoxy By S.H.E. for the tax years 2019 or 2020.

64.     Further, the purported February 2020 statement for the BB&T account ending in 9989 submitted with the application listed a balance of $106,042.67.  I understand the February 2020 statement submitted with the application to be fake and fraudulent as the actual BB&T account in the name of Epoxy By S.H.E. ending in 9989 was not even opened by **GLENN** until February 23, 2021—about a year after the date of the purported statement.   **GLENN** is the sole signatory of the BB&T account ending in 9989.

65.     The PPP loan was ultimately declined.

### August 2021 EIDL Application for "Tomeka Glenn"

66.     On or about August 27, 2021, an EIDL application was submitted for a business called "Tomeka Glenn."  The application indicated, among other things, that the business had gross revenues of $100,000 in the twelve months prior to January 31, 2020 and employed 2 employees as of January 31, 2020. It further listed **GLENN** as the owner of the business and a phone number of 443-477-9451. The EIDL loan was ultimately declined.

### June 2020 EDL Loan and March 2021 PPP Loan For Keepsake Investment Realty LLC

67.     In addition to the SBA loans obtained directly by **GLENN** for the purported businesses she controlled, there is probable cause to believe **GLENN** engaged in a scheme to assist **DAVIS**, with whom she is in a romantic relationship, with the submission and receipt of fraudulent PPP and EIDL loan applications and received a portion of the loan proceeds.

68.     Information obtained from Cross River Bank, an authorized SBA lender, indicated that a PPP loan application was submitted for For Keepsake Investment Realty LLC on or about

March 11, 2021.  The loan application identified Kevin Recardo **DAVIS** as the business owner, and included an image of a genuine Maryland Driver's License issued to **DAVIS**. On the loan application, the following item was selected under the loan purpose section: Payroll.

69.     For Keepsake Investment Realty was formed in the State of Maryland on June 13, 2017.  **DAVIS**, whose address was listed as 2809 Claybrooke Dr. Windsor Mill, MD 21244, was listed as its Registered Agent. The listed business address was also listed as 2809 Claybrooke Dr. Windsor Mill, MD 21244.  Records from the State of Maryland reflect that the organization was "forfeited" on October 11, 2019; Articles of Reinstatement were filed for the business on October 21, 2020.

70.     The PPP loan application information reported that **DAVIS**'s business had twelve (12) employees, and an average monthly payroll of $58,147.8 (equivalent to more than $697,764 annually). The loan application also contained a certification that the business "was in operation on February 15, 2020…or had employees for whom it paid salaries and payroll taxes or paid independent contractors" which was acknowledged affirmatively.[3]

71.     Cross River Bank also provided copies of documents submitted in support of the loan application, including an image of a voided check from a Bank of America account ending in 3093 with a payor of For Keepsake Investment Realty, digital PDF files of a purported February 2020 bank statement for the Bank of America account ending 3093, and a purported IRS Form 940 for 2019: Employer's Annual Federal Unemployment Tax Return.

---

[3] According to records obtained by the Maryland Department of Labor, a claim for unemployment insurance (UI) benefits was made in **DAVIS's** name on or about May 22, 2020. The application claimed, among other things, that (1) **DAVIS** was self-employed—the EIN for Keepsake Investment Realty was listed as **DAVIS's** employer; (2) no other workers were employed by the business; and (3) **DAVIS's** estimated total earnings was $44,000.  Ultimately, more than $13,000 in unemployment compensation was sent to **DAVIS** at his residence located at 2809 Claybrooke Dr. in Baltimore, Maryland.

72.     Further, the following question was answered "No" on page 2 of the application:

> a. Are you presently subject to an indictment, criminal information,     **No**
> arraignment, or other means by which formal criminal charges are
> brought in any jurisdiction? b. Within the last 5 years, for any felony,
> have you ever been convicted, plead guilty, plead nolo contendere,
> been placed on pretrial diversion, or been placed on any form of parole
> or probation (including probation before judgment)?

73.     On or about May 6, 2013, Davis pleaded guilty in the United States District Court for the District of Arizona to a charge of Conspiracy to Distribute Marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  On July 24, 2013, the Arizona Court sentenced Davis to 63 months' incarceration, followed by four years of Supervised Release. Davis commenced his term of Supervised Release—under which he was under the supervision of United States Probation—on March 24, 2017, about four years before the submission of the PPP application.

74.     The Bank of America bank statements contained alterations, including mismatched sizing and fonts, spacing errors, and incorrect formatting.  Moreover, I reviewed records for the Bank of America account ending in 3093, for which **DAVIS** was a signatory.  The Bank of America records show that the account balance was actually $1,000 in February 2020, however, the purported February 2020 bank statement provided to Cross River Bank listed a balance of $161,278.78.

75.     Further, the purported Form 940 indicated that For Keepsake Investment Realty paid $697,773.71 in "Total payments to all employees" for 2019.  In fact, IRS records indicate that there was no record of business tax filings for For Keepsake Investment Realty for the tax years 2019 or 2020.  I have also confirmed with the Maryland Department of Labor that it has no record of any wages being paid by For Keepsake Investment Realty.

76.     On or about March 16, 2021, SBA PPP loan #1787618603 was approved for For Keepsake Investment Realty in the amount of $145,369.00. The loan proceeds were disbursed on

March 18, 2021, via ACH transfer to the Bank of America account ending in 3093 and controlled by **DAVIS**.

77.     From or about January 1, 2019 through on or about May 31, 2020, Bank of America account ending in 3093 had no activity.

78.     On or about July 2, 2020 and on or about July 15, 2020, respectively, the SBA deposited $10,000 (an EIDL advance) and $64,900 (an EIDL loan) respectively, in EIDL funds For Keepsake in the Bank of America account ending in 3093.  Prior to the EIDL loan deposits, there were no payroll expenses debited from the account or other activity consistent with the payment of employee wages.

79.     The EIDL loan application For Keepsake Investment Realty submitted on June 30, 2020 claimed, among other things, that the business had gross revenues of $250,000 in the twelve months prior to January 31, 2020 and employed 10 employees as of January 31, 2020. It listed **DAVIS** as the owner of the business.

80.     In the months following the disbursement of the EIDL loans, the records for the Bank of America account ending in 3093, and controlled by **DAVIS**, reflected the purchase of, among other things, airline tickets from multiple airlines, and luxury goods from retailers such as Moncler ($2,321.40), Neiman Marcus ($842.70), and Moose Knuckles ($1,487.55).

81.      Moreover, on December 7, 2021, For Keepsake Investment Realty sent $7,000 via a teller transfer to KDons Vanity Décor LLC's Bank of America account ending in 7688, which was controlled by **GLENN**.

82.     In the month following the PPP loan disbursement on or about March 18, 2021, the Bank of America account ending in 3093 likewise reflected the purchase of luxury goods and purchases associated with travel to multiple resorts in Jamaica—as set forth below:

| Date | Purchase | Amount |
|------|----------|--------|
| 03/22/2021 | Tumi Stores | $4,302.72 |
| 03/24/2021 | Neiman Marcus | $6,000 |
| 03/25/2021 | Jewels Montego Bay Hotel Montego | $5,234.40 |
| 03/25/2021 | Jewels Montego Bay Hotel Montego Bay | $157.03 |
| 03/29/2021 | Sandals Ocho Rios | $720.26 |
| 4/1/21 | Jewels Montego Bay Hotel Montego | $691.60 |
| 4/2/21 | Jewels Montego Bay Hotel Montego Bay | $3,170.00 |
| 4/7/21 | Jewels Montego Bay Hotel Montego | $2,219.00 |
| 4/19/21 | Luis Vuitton | $2,904.40 |

83.     Further, based on records received from a Mercedes-Benz dealership in Maryland, I understand that on or about March 1, 2021, **GLENN** ordered a 2021 Mercedes-Benz S580 sedan with a total price of $148,171.60 and made an initial payment of $5,000.  In the months that followed, **GLENN** made multiple other payments in connection with the purchase of the car.  By August 26, 2021, **GLENN** had paid $61,371.60 for the vehicle, including through a $34,000 cashiers check drawn on the Bank of America account ending in 1439 in the name of TD Innovative Consulting, for which **GLENN** was the sole signatory (discussed above).  The balance was financed.

84.     Based on the information below, I understand **GLENN** and **DAVIS** to be in a relationship together. They hold a joint account at Navy Federal Credit Union, account ending in 7405, based on my review of records from the account.  Further, on March 29, 2021, **GLENN** also charged $370.00 at a Sandals Ocho Rios resort in Jamaica, indicating **GLENN** and **DAVIS** were

vacationing together in Jamaica in the weeks immediately following the disbursement of the PPP loan funds.  Records received from Sandals indicate list **GLENN** and **DAVIS** as guests at the resort beginning on March 25, 2021.  The records from Sandals further indicate that one of **DAVIS**'s family members (S.D.) was a guest at the resort as well.  Further, I have reviewed Southwest Airlines travel records for **GLENN** and **DAVIS** that confirm that they traveled to and returned from Jamaica on the same flights.

85.     Moreover, I know from my review of records from the Baltimore County Police Department that **GLENN** and **DAVIS** were in a relationship as early as 2019. Specifically, on March 27, 2019, **DAVIS** reported a break in at his residence 2809 Claybrooke Drive, Windsor Mill, Maryland.[4] **DAVIS** told officers he was out eating dinner with his girlfriend, **GLENN**, when his house was broken into. **GLENN** was also interviewed by investigators as part of the burglary investigation.

86.     In total, at least at 9 fraudulent EIDL and PPP loans were sought by businesses or purported businesses controlled by **GLENN** and **DAVIS** during the period of June 2020 to April 2021.

## CONCLUSION

87.     Accordingly, your affiant submits that there is probable cause to believe that between in or about June 2020 and in or about April 2021, in the District of Maryland**, GLENN** and **DAVIS** committed Wire Fraud Conspiracy in violation of 18 U.S.C. § 1349.  Accordingly, I respectfully request the Court authorize Criminal Complaints and Arrest Warrants for **GLENN** and **DAVIS**.

---

[4] According to the Maryland Department of Taxation and Assessments (SDAT), **DAVIS** is the owner of 2809 Claybrooke Drive, Windsor Mill, Maryland.

Respectfully submitted,

*Jaclyn Bloomingdale*
Special Agent Jaclyn Bloomingdale
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this ___16th_____ of December 2022.

THE HONORABLE MATTHEW J. MADDOX
UNITED STATES MAGISTRATE JUDGE